**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00259-CYC-NYW

ACTIVATE GAMES INC.,

Plaintiff,

v.

SQUARE ENTERTAINMENT LLC,

Defendant.

---

**DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT**
**FOR PATENT INFRINGEMENT AND JURY DEMAND**

---

For its Answer to Plaintiff Activate Games, Inc.'s ("Activate") Complaint for Patent Infringement and Jury Demand, Defendant Square Entertainment LLC ("Square") states and alleges by reference to the paragraph numbers of Activate's Complaint (Dkt.1) as follows:

## NATURE OF THE CASE

1. This action is for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, et seq, for infringement of Activate's U.S. Patent Nos. 11,511,171 (the "'171 Patent") and 11,986,713 (the "'713 Patent") (collectively, the "Patents-in-Suit"). Plaintiff seeks monetary damages and injunctive relief in this action.

**ANSWER:** Defendant admits that Activate's Complaint purports to allege that this is an action for patent infringement of Activate's U.S. Patent Nos. 11,511,171 (the "171 Patent") and 11,986,713 (the "713 Patent") under 35 U.S.C. §§ 1, *et seq*. Defendant understands that Activate is seeking damages and injunctive relief.

Defendant denies infringement of U.S. Patent Nos. 11,511,171 and 11,986,713, denies that Activate is entitled to damages, and denies that Activate is entitled to injunctive relief, notwithstanding all the foregoing of which are legal conclusions to which Defendant is not obligated to respond.

2. Defendant Square has been and is infringing the Patents-in-Suit in violation of 35 U.S.C. § 271 by manufacturing, using, importing, selling, and/or offering for sale in the United States products, methods, processes, services and/or systems that infringe the ’171 and ’713 Patents, which includes but is not limited to the Pixel™ Game System (“Pixel Game System”).

**ANSWER:** Defendant denies that it has ever infringed the Patents-in-Suit, namely U.S. Patent Nos. 11,511,171 and 11,986,713, in violation of 35 U.S.C. § 271 by manufacturing, using, importing, selling, and/or offering for sale in the United States products, methods, processes, services and/or systems that infringe the ’171 and ’713 Patents with its Pixel™ Game System (“Pixel Game System”).

## THE PARTIES

3. Plaintiff Activate Games Inc. is a Canadian Corporation headquartered at 11-1099 Wilkes Avenue, Winnipeg, MB, R3P 2S2, Canada. Activate owns and franchises interactive gaming facilities in the United States and abroad.

**ANSWER:** Defendant lacks sufficient knowledge to form a belief about the allegations in Paragraph 2 of Plaintiff’s Complaint and therefore denies them.

4. Each Activate location provides fun and interactive gaming rooms where players can compete, earn rewards, and track achievements. Each location contains numerous interactive game rooms, each with different games and gameplay sequences. This includes rooms with an interactive floor system that allows players to move about the floor interacting with the light up

tiles of the floor. An example of an Activate gameplay sequence on an interactive floor is portrayed in the screenshot below:




*See* https://www.youtube.com/watch?v=VPNUVuUp3X8, at MM:SS timestamps 00:03 (accessed

January 9, 2025). Because of its innovation, Activate has obtained several U.S. and foreign patents that cover the overall Activate system as well several of its games and gameplay sequences, including its interactive floor games. This includes U.S. Patent Nos. 11,534,679, 11,511,171, 11,161,050, 11,452,944, and 11,986,713, as well as several pending published patent applications.

**ANSWER:** Defendant admits only that U.S. Patent Nos. 11,534,679, 11,511,171, 11,161,050, 11,452,944, and 11,986,713 are assigned to Activate Games, Inc. of Winnipeg (CA).

Defendant lacks sufficient knowledge to form a belief about the remaining allegations in Paragraph 2 of Plaintiff's Complaint and therefore denies them.

5. Upon information and belief, Defendant Square Entertainment LLC is a limited liability company organized and existing under the laws of the State of Arizona and has a principal place of business at 469 North Denver Avenue, Loveland, Colorado, 80537.

**ANSWER:** Admitted.

6. Upon information and belief, Square is the exclusive licensee of U.S. intellectual property rights relating to the Pixel Game System, which is a competing interactive floor system developed by a latecomer to the market, Pixel Games GmbH.

**ANSWER:** Defendant admits that it is the exclusive licensee of U.S. intellectual property rights relating to the Pixel Game System. Defendant lacks sufficient knowledge to form a belief about the remaining allegations in Paragraph 6 of Plaintiff's Complaint and therefore denies them.

## JURISDICTION AND VENUE

7. Square has its principal place of business at 469 North Denver Avenue, Loveland, Colorado, 80537. Square states on its website, www.pixel-us.com, that Square ships, installs, and supports the Pixel Game System. Square does not identify any other locations in the United States and so on information and belief, Square commits its acts of infringement in this District.

**ANSWER:** (a) Square admits its principal place of business is at 469 North Denver Avenue, Loveland, Colorado, 80537. (b) Square admits its website is found at www.pixel-us.com. (c) Square admits only that its website states the Pixel Games – Interactive Gaming Floor is shipped, installed, & supported in the USA.

Defendant denies its website does not identify other locations in the United States. Defendant denies it commits acts of infringement in the District of Colorado, anywhere in North America, or elsewhere.

8. Upon information and belief, Square and/or its principals operate interactive gaming facilities in this District at which the infringing Pixel Game System is installed and operated. For example, Square's Chief Operating officer, Jeff Willy, is also identified as an owner

of Loveland Laser Tag, located at 401 N. Denver Ave., Loveland, Colorado, 80538. https://fecfun.com/fun-experts/jeff-willy-polaris-entertainment/. Loveland Laser Tag states on its website that it is the site of "the first Pixel Games interactive gaming floor in the US!" https://www.laserfuncenter.com/attractions/pixel-games/. In addition, Square Entertainment LLC maintains the website www.pixel-us.com that advertises that the "Loveland Laser Tag" location is one of the locations in North America where the Pixel Game System is shipped, installed, and supported by Square.

**ANSWER:** (a) Square admits it operates an interactive gaming facility in the District of Colorado wherein the Pixel Game System is installed and operated. (b) Patent infringement is a question of law therefore Defendant is not required to answer. Nonetheless, Square denies the Complaint's characterization of the Pixel Game System as "infringing." (c) Square admits that Jeff Willy is Square's Chief Operating Officer. (d) Square admits that Jeff Willy is an owner of Loveland Laser Tag, which is located at 401 N. Denver Ave., Loveland, Colorado, 80538. (e) Square admits that Loveland Laser Tag states on its website that it is the site of "the first Pixel Games interactive gaming floor in the US!" (f) Square admits that its website www.pixel-us.com advertises that the "Loveland Laser Tag" location is one of the locations in North America where the Pixel Game System is shipped, installed, and supported by Square.

9. Upon information and belief, Square actively markets and sells the Pixel Game System within the State of Colorado and in this District. For example, upon information and belief, Square operates and maintains the Loveland Laser Tag location in this District. Square also maintains its principal place of business in this District, where, on information and belief, Square conducts all business related activities relating to the Pixel Game System. Square has done and continues to regularly do business in the United States and Colorado and has

committed and continues to commit acts of patent infringement in the United States and in the State of Colorado, including by offering to sell and/or selling the Pixel Game System in Colorado, and/or inducing others to commit acts of patent infringement in Colorado.

**ANSWER:** Defendant denies that Square operates and maintains the Loveland Laser Tag location in this District. Square admits: (a) Square actively markets and sells the Pixel Game System within the State of Colorado and in this District; (b) Square maintains its principal place of business in this District.; and (c) Square has done and continues to regularly do business in the United States and Colorado.

Patent infringement is a question of law therefore Defendant is not required to answer. Nonetheless, Square denies it has committed or is committing acts of patent infringement anywhere in the United States, in the State of Colorado, or elsewhere, including by offering to sell and/or selling the Pixel Game System in Colorado or elsewhere, and/or inducing others to commit acts of patent infringement in Colorado or elsewhere. As to the remaining allegations in paragraph 9 of the Complaint, Defendant denies.

10. This action arises under the patent laws of the United States, Title 35 of the United States Code. Thus, this Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§1331 and 1338(a).

**ANSWER:** Defendant admits only that the Complaint purports to allege a claim arising under the patent laws of the United States, Title 35 of the United States Code. Because the question of subject matter jurisdiction is a conclusion of law rather than a statement of fact, no response is required. To the extent this Court finds a response is required, Defendant admits this Court has subject matter jurisdiction, for the purposes of this action only.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) because this is an action for patent infringement, because Defendant has committed acts of infringement in this District, including but not limited to the sale and offer for sale of infringing products, and because Defendant has a regular and established place of business in this District, including at least Defendant's physical location at 469 North Denver Avenue, Loveland, Colorado, 80537, from where the operations of Square are directed and controlled.

**ANSWER:** Defendant admits only that it has a regular and established place of business in this District only at Defendant's physical location at 469 North Denver Avenue, Loveland, Colorado, 80537.

Because the question of venue is a conclusion of law rather than a statement of fact, no response is required. To the extent this Court finds a response is required, Defendant admits that venue is proper, for the purposes of this action only.

Patent infringement is a question of law therefore Defendant is not required to answer. Nonetheless, Square denies it has committed or is committing acts of patent infringement in Colorado, or elsewhere, including but not limited to selling or offering to sell an infringing product in Colorado or elsewhere.

Defendant denies it has committed acts of infringement in this District, or elsewhere, including but not limited to the sale and offer for sale of infringing products. Defendant denies the remaining allegations in paragraph 11 of the Complaint not already addressed.

12. This Court has personal jurisdiction over Square under Rule 4 of the Federal Rules of Civil Procedure and the provisions of Co. Stat. § 801.05, by virtue of the fact that Square purposefully availed itself to the privilege of conducting and soliciting business within the State, including, upon information and belief, by engaging in at least a portion of the infringing acts

alleged herein through sales, offers for sale, and marketing of the infringing products within the State and entering into contracts with residents of the State for the same, including for the installation and maintenance of the accused Pixel Game System at Loveland Laser Tag in this District. Accordingly, because the claims set forth in this action arise out of Square's infringing activities within this State, as well as others, Square has purposefully availed itself of the privilege of conducting business in this District and within the State of Colorado, it is fair and reasonable for this Court to exercise personal jurisdiction over it.

**ANSWER:** The question of personal jurisdiction is a conclusion of law rather than a statement of fact, to which no response is required. To the extent this Court requires a response, Defendant admits that this Court has personal jurisdiction of it for purpose of this action only.

Patent infringement is a question of law therefore Defendant is not required to answer. Nonetheless, Square denies it has committed or is committing acts of patent infringement in Colorado, or elsewhere, including by engaging in any portion of any infringing act, whether alleged in Plaintiff's Compliant or otherwise, including through sales, offers for sale, and/or marketing of any infringing product alleged in the Complaint or otherwise, of an infringing product in Colorado or elsewhere.

Defendant admits it installed and maintains the accused Pixel Game System at Loveland Laser Tag in the District.

Defendant denies the remaining allegations in paragraph 12 of the Complaint not already addressed.

## BACKGROUND AND THE PATENTS-IN-SUIT

13. Activate has redefined the entertainment industry and offers a unique blend of physical activity and gaming that promotes a healthy lifestyle. Since its founding in 2017,

Activate has grown to over 35 locations across Canada and the United States, one location in the United Arab Emirates, and one location in England, with 15 more under development worldwide.

**ANSWER:** Defendant lacks sufficient knowledge to form a belief about the allegations in paragraph 13 of Plaintiff's Complaint and therefore denies them.

14. This case involves two (2) patents that represent Activate's novel interactive gaming floors. These patents include: (i) United States Patent No. 11,511,171, entitled "Interactive Floor And Amusement Systems And Methods Employing Same" (the "'171 Patent") and United States Patent No. 11,986,713 (the "'713 Patent"), entitled "Interactive Floor And Amusement Systems And Methods Employing Same." The '713 Patent is a continuation of the '171 Patent and both patents claim priority to a Canadian patent application, filed on January 20, 2020.

**ANSWER:** To the extent this paragraph makes allegations characterizing Activate's products, Defendant lacks sufficient knowledge to form a belief about the allegations in paragraph 14 and therefore denies them.

Defendant admits that Activate appears to be the assignee of (i) United States Patent No. 11,511,171, entitled "Interactive Floor And Amusement Systems And Methods Employing Same" (the "'171 Patent") and United States Patent No. 11,986,713 (the "'713 Patent"), entitled "Interactive Floor And Amusement Systems And Methods Employing Same."

Defendant admits the '713 Patent is a continuation of the '171 Patent and that both patents claim priority to a Canadian patent application, filed on January 20, 2020. Defendant denies the remaining allegations in paragraph 12 of the Complaint not already addressed.

15. As explained in the ’171 Patent, “[i]n recent years, escape rooms have become a popular form of immersive, live action amusement attraction, providing an alternative to more conventional indoor amusement attractions such as laser tag, and to large scale amusement parks.” ’171 Patent at 1:23-27. These traditional forms of immersive attractions can be “cost prohibitive, particularly in smaller markets and/or those where outdoor parks are subject to seasonal constraints in climates of notable temperature variation.” *Id.* at 1:23-30. The Patents-in-Suit solve this problem, among others, by providing, in part, “immersive amusement attractions employing a novel interactive floor environment and related gameplay methodologies.” *Id.* at 1:31-39.

**ANSWER:** Regarding the truth of the statements quoted from the ‘171 Patent, Defendant lacks sufficient knowledge to form a belief about the truth of these quoted statements and therefore denies them. Defendant lacks sufficient knowledge to form a belief about whether the Patents-in-Suit solve the problems stated in the ‘171 patent, or any other problem, by providing “immersive amusement attractions employing a novel interactive floor environment and related gameplay methodologies” and therefore denies these allegations.

Regarding what is printed in the ‘171 patent, Defendant admits the ‘171 Patent states ““[i]n recent years, escape rooms have become a popular form of immersive, live action amusement attraction, providing an alternative to more conventional indoor amusement attractions such as laser tag, and to large scale amusement parks.” ’171 Patent at 1:23-27; admits the ‘171 patents states “large scale amusement parks . . . are cost prohibitive . . . particularly in smaller markets and/or those where outdoor parks are subject to seasonal constraints in climates of notable temperature variation.” Id. at 1:23-30.

16. The ’171 Patent was duly and lawfully issued by the United States Patent and Trademark Office (“USPTO”) on November 29, 2022. A true and correct copy of the ’171 Patent is attached as Exhibit A.

**ANSWER:** The question of whether the ‘171 Patent was lawfully issued is a question of law therefor Defendant is not required to answer. To the extent Defendant is required to answer, Defendant denies. Although the copy attached as Exhibit A of the Complaint appears to be a copy of the ‘171 Patent, Plaintiff’s Complaint is neither verified nor does the document in Appendix A appear to be a certified copy of the ‘171 Patent, therefore Defendant is without sufficient knowledge to admit or deny this allegation.

17. Plaintiff Activate is the owner, by assignment, of all rights, title, and interest in and to the ’171 Patent and holds the right to sue and recover damages from infringement thereof, including past damages.

**ANSWER:** Defendant admits only that Plaintiff Activate is the assignee listed on the ‘171 Patent. Defendant otherwise is without sufficient knowledge to admit or deny the remaining allegations in this paragraph. Square repeats its denial that it has committed or is committing acts of patent infringement in Colorado, or elsewhere, including by selling or offering to sell an infringing product in Colorado or elsewhere.

18. The ’713 Patent was duly and lawfully issued by the USPTO on May 21, 2024. A true and correct copy of the ’713 Patent is attached as Exhibit B.

**ANSWER:** Defendant denies the ‘713 Patent was lawfully issued. Although the copy attached as Exhibit B of the Complaint appears to be a copy of the ‘713 Patent, Plaintiff’s Complaint is neither verified nor does the document in Appendix B appear to be a certified copy

of the ‘713 Patent, therefore Defendant is without sufficient knowledge to admit or deny this allegation.

19. Plaintiff Activate is the owner, by assignment, of all rights, title, and interest in and to the ’713 Patent and holds the right to sue and recover damages from infringement thereof, including past damages.

**ANSWER:** Defendant admits only that Plaintiff Activate is the assignee listed on the ‘713 Patent. Defendant otherwise is without sufficient knowledge to form a belief about the remaining allegations in this paragraph, therefore Defendant denies them. Defendant Square repeats its denial that it has committed or is committing acts of patent infringement in Colorado, or elsewhere, including by selling or offering to sell an infringing product in Colorado or elsewhere.

20. Activate marks, pursuant to 35 U.S.C. § 287, its own interactive floor systems that practice the Patents in Suit.

**ANSWER:** Defendant is without sufficient knowledge to form a belief about the allegations in paragraph 20, therefore Defendant denies the allegations.

**DEFENDANT SQUARE’S (ALLEGEDLY) INFRINGING PRODUCTS**

21. Plaintiff incorporates the proceeding paragraphs by reference as if fully set forth herein.

**ANSWER:** Defendant incorporates by reference its response to the preceding paragraphs 1–21 as if fully set forth herein.

22. As discussed in further detail below, Square sells and offers for sale within the United States certain interactive gaming floors that infringe the Patents-in-Suit, including, but not limited to, the Pixel Game System (the “Accused Products”).

**<u>ANSWER</u>:** Patent infringement is a question of law therefore Defendant is not required to answer. Nonetheless, Square denies its activities related to the Accused Products infringe the Patents-in-Suit. Square admits that is sells and offers for sale certain interactive gaming floors within the United States, including the Pixel Gems System.

23. Square claims to be the exclusive licensee of U.S. intellectual property rights relating to the Pixel Game System which, upon information and belief, was developed by Pixel Games GmbH.

**<u>ANSWER</u>:** Admitted.

24. In fall 2023, Activate learned that Pixel Games GmbH ("Pixel") was advertising and offering for sale certain game room products and services in the United States, including the Pixel Game System. The Pixel Game System is an "interactive gaming floor." *See* https://pxl-games.com/ (accessed December 16, 2024). An example of the Pixel Game System is portrayed in the screenshot below:




*See* https://www.youtube.com/watch?v=MHATkSMhmwE, at MM:SS timestamps 00:21 (accessed December 16, 2024).

**ANSWER:** Defendant admits the Pixel Game System is an interactive gaming floor. Defendant admits that the URL "https://www.youtube.com/watch?v=MHATkSMhmwE" links to webpage that plays a video showing an example of the Pixel Game System. Defendant is without sufficient knowledge to form a belief about the remaining allegations in paragraph 24, such as, but not limited to, when Activate learned of or knew something, and therefore denies them.

25. Activate learned that Pixel operated a booth demonstrating the Pixel Game System at the 2023 IAAPA Convention, which was held in Orlando, Florida during the week of November 13, 2023. Believing that the Pixel Game System infringed Activate's intellectual property rights, on December 11, 2023, Activate, through its counsel, sent a letter to Pixel in Germany informing Pixel of Activate's intellectual property rights, including its patents and published applications. A true and correct copy of that letter is attached hereto as Exhibit C. Activate informed Pixel that it "is concerned that some of the technology incorporated into Pixel's products and services may infringe Activate's issued and pending United States patents." Ex. C at 1. In particular, Activate informed Pixel that it appeared to offer "floor illumination and pressure-sensing features, as claimed in Activate's '171 Patent, at its gaming facilities and through its websites and exhibitions." *Id*. at 2.

**ANSWER:** Defendant admits it operated a booth demonstrating the Pixel Game System at the 2023 IAAPA Convention in Orlando, Florida during the week of November 13, 2023. Defendant admits that Square operated a booth demonstrating the Pixel Game System at this 2023 IAAPA Convention. Square is aware that Pixel received a letter that appears to be the letter attached to the Complaint as Exhibit C containing the statements in the Exhibit C letter.

Defendant is without sufficient knowledge to form a belief about the remaining allegations in paragraph 25, such as, but not limited to, when Activate learned of or knew

anything, and therefore denies them. Defendant denies the remaining allegations in paragraph 25 of the Complaint not already addressed.

26. On December 19, 2023, counsel for Pixel responded and stated that while "Pixel previously advertised certain of its game systems and services for sale in the U.S," Pixel advised "that ***it is no longer doing so***." A true and correct copy of that letter is attached hereto as Exhibit D. Pixel then reiterated that statement in a January 23, 2024 email. A true and correct copy of that email is attached hereto as Exhibit E. Given Pixel's representations, Activate considered the matter closed and did not take further action. Pixel never informed Activate that Pixel was licensing its intellectual property to any other entity or that the Pixel Game System would be offered for sale by Square or others in the United States.

**ANSWER:** Defendant admits that on or about December 19, 2023, counsel for Pixel responded as set forth in paragraph 26. Defendant admits that the letter in Exhibit D appears to be a true and correct copy of counsel for Pixel's response to counsel for Activate's letter of December 11, 2023. Defendant admits that Exhibit E appears to be a true and correct copy of the January 23, 2024 email. Square admits that Pixel never informed Activate of any licensing activities or that the Pixel Game System would be offered for sale by Square in the United States.

Defendant is without sufficient knowledge to form a belief about other allegations in paragraph 26, such as, but not limited to, when Activate learned of or knew anything and/or what Activate believed and therefore denies them. Defendant denies the remaining allegations in paragraph 26 of the Complaint not already addressed.

27. Activate was therefore surprised to learn that less than a year later, the Pixel Game System was being demonstrated by Square at the 2024 IAAPA Convention being held in Orlando, Florida the week of November 18, 2024. After seeing the Pixel Game System advertised and

demonstrated at Square's booth, pursuant to IAAPA's intellectual property policy, on November 19, 2024, Activate lodged a written complaint, informing IAAPA that the Pixel Game System infringed Activate's intellectual property rights, including U.S. Patent No. 11,511,171. A true and correct copy of that Complaint is attached hereto as Exhibit F. Activate also informed IAAPA that Pixel previously represented that it was no longer advertising the Pixel Game System for sale in the United States in response to Activate's infringement allegations in 2023. *Id.* at 2. IAAPA then independently determined that Square could not advertise the Pixel Game System at the 2024 IAAPA Convention.

**ANSWER:** Defendant admits it demonstrated the Pixel Game System at Square's booth at the 2024 IAAPA Convention in Orlando Florida the week of November 18, 2024. Defendant is aware that Activate lodged a complaint with IAAPA alleging the Pixel Game System infringed on Activate's intellectual property rights, including the '171 Patent. Defendant is without sufficient knowledge or belief to answer whether a true and correct copy of that complaint is reproduced as Exhibit F. Defendant admits that IAAPA made a determination that Square could not advertise the Pixel Game System at the 2024 IAAPA Convention. Defendant is without sufficient knowledge to form a belief about other allegations in paragraph 27, such as, but not limited to, what Activate said to IAAPA. when Activate learned of or knew anything and/or what Activate believed and therefore denies them. Defendant denies the remaining allegations in paragraph 27 of the Complaint not already addressed.

28. The next morning, Square filed a declaratory judgment action in the District of Arizona and informed IAAPA of the suit. *Square Entertainment LLC v. Activate Games Inc.*,

Civ. No. 2:24-cv-03261-JCG (D.Ariz. Nov. 21, 2024).[1] IAAPA then allowed Square to resume demonstrating the Pixel Game System at the conference.

**ANSWER:** Defendant admits that it filed the declaratory judgement action referenced in paragraph 28 on November 21, 2024. Defendant denies that November 21 is "the next morning" following November 19. Defendant admits it informed IAAPA of the suit. Defendant admits that IAAPA allowed Square to resume demonstrating the Pixel Game System at the conference.

29. Square, therefore, had actual knowledge of the '171 Patent as of at least November 19, 2024, the day Activate filed the IAAPA Complaint.

**ANSWER:** Admitted that Square had actual knowledge of the '171 Patent as of at least November 19, 2024. Defendant is without sufficient knowledge to form a belief about the date Activate filed the IAAPA Complaint and therefore denies this allegation.

30. In addition to demonstrating the Pixel Game System at the 2024 IAAPA Convention, upon information and belief, Square actively encouraged potential customers to purchase the Pixel Game System by posting a video advertising the Pixel Game System to its Instagram Account during the IAAPA Convention:




[1] Square's declaratory judgment lawsuit only relates to the '171 Patent and was filed in the District Court of Arizona, where Activate is not subject to personal jurisdiction.

**ANSWER:** Admitted.

31. Thereafter, on January 24, 2025, Activate sent Square a letter informing Square that the Pixel Game System infringes one or more claims of the ’713 Patent. A true and correct copy of that letter is attached hereto as Exhibit G.

**ANSWER:** Defendant admits only that Activate sent Square a letter on January 24, 2025 alleging that the Pixel Game System infringes one or more claims of the ‘713 Patent. Square admits that it received a letter on January 24, 2025, a true and correct copy of which appears to be filed with the Complaint as Exhibit G. Patent infringement is a question of law therefore Defendant is not required to answer. Nonetheless, Square denies it has committed or is committing acts of patent infringement in Colorado, or elsewhere, including by selling or offering to sell an infringing product in Colorado or elsewhere.

32. Thus, Square had actual knowledge of the ’713 Patent as of at least January 23, 2025.

**ANSWER:** Denied.

33. Square’s promotion, sale, and offer for sale of the Pixel Game System has continued and, as recent as January 7, 2025, Square has advertised the Pixel Game System on the Pixelgames.usa Instagram page, which upon information and belief, is maintained by Square:




**ANSWER:** Admitted.

**COUNT I**

**(Infringement of the ’171 Patent)**

34. Activate incorporates by reference paragraphs 1-33 as if set forth fully herein.

**ANSWER:** Defendant incorporates by reference its response to the preceding paragraphs 1–33 as if fully set forth herein.

35. Defendant Square has infringed, and continues to infringe, either literally or under the doctrine of equivalents, one or more claims of the ’171 Patent in violation of 35 U.S.C. § 271, directly or indirectly, by making, using, selling, and/or offering for sale in the United States, and/or importing the Accused Products.

**ANSWER:** Patent infringement is a question of law therefor Defendant is not required to answer. Nonetheless, Square denies it has committed or is committing acts of patent infringement of the ‘171 Patent, including by selling or offering to sell an infringing product in Colorado or elsewhere and/or importing the Accused Products.

36. A representative claim chart demonstrating how the Accused Products infringe the ’171 Patent is attached hereto as Exhibit H.

**ANSWER:** Admitted only that a claim chart was attached to the Complaint as Exhibit H. Patent infringement is a question of law therefor Defendant is not required to answer whether the claim chart attached as Exhibit H demonstrates infringement. To the extent an answer is required, Defendant denies that the Accused Products infringe the ‘171 Patent.

37. The ’171 Patent is presumed valid.

**ANSWER:** A presumption of validity is a question of law, therefore Defendant is not required to answer. To the extent that an answer is required, Defendant denies that the ‘171 Patent is valid.

38. Despite Square's knowledge of the '171 Patent and its infringement of the same, Square has continued to directly infringe the '171 Patent. Accordingly, Square's infringement of the '171 Patent has been willful and deliberate, justifying an award of enhanced damages of treble the amount found or assessed under 35 U.S.C. § 284.

**ANSWER:** Infringement is a question of law, therefore Defendant is not required to answer. To the extent that an answer is required, Defendant denies infringement of the '171 Patent, denies willful infringement, and denies that an award of enhanced damages under 35 U.S.C. § 284 is justified. Defendant denies the remaining allegations in paragraph 38 of the Complaint not already addressed.

39. Plaintiff has been injured and seeks damages to adequately compensate it for Square's infringement of the '171 Patent. Such damages should be no less than a reasonable royalty under 35 U.S.C. § 284.

**ANSWER:** Denied.

40. Upon information and belief, Square will continue to infringe the '171 Patent unless permanently enjoined by this Court. Pursuant to 35 U.S.C. § 283, Plaintiff is entitled to a preliminary and permanent injunction against further infringement of the '171 Patent by Square.

**ANSWER:** Denied.

**COUNT II**

**(Infringement of the '713 Patent)**

41. Activate incorporates by reference paragraphs 1-40 as if set forth fully herein.

**ANSWER:** Defendant incorporates by reference its response to the preceding paragraphs 1–40 as if fully set forth herein.

42. Defendant Square has infringed, and continues to infringe, either literally or under the doctrine of equivalents, one or more claims of the ’713 Patent in violation of 35 U.S.C. § 271, directly or indirectly, by making, using, selling, and/or offering for sale in the United States, and/or importing the Accused Products.

**ANSWER:** Patent infringement is a question of law therefor Defendant is not required to answer. Nonetheless, Square denies it has committed or is committing acts of patent infringement of the ‘713 Patent, including by selling or offering to sell an infringing product in Colorado or elsewhere and/or importing the Accused Products.

43. A representative claim chart demonstrating how the Accused Products infringe the ’713 Patent is attached hereto as Exhibit I.

**ANSWER:** Admitted only that a claim chart was attached to the Complaint as Exhibit I. Patent infringement is a question of law therefor Defendant is not required to answer whether the claim chart attached as Exhibit I demonstrates infringement. To the extent an answer is required, Defendant denies that the Accused Products infringe the ‘713 Patent.

44. The ’713 Patent is presumed valid.

**ANSWER:** A presumption of validity is a question of law, therefore Defendant is not required to answer. To the extent that an answer is required, Defendant denies that the ‘713 Patent is valid.

45. Despite Square’s knowledge of the ’713 Patent and its infringement of the same, Square has continued to directly infringe the ’713 Patent. Accordingly, Square’s infringement of the ’713 Patent has been willful and deliberate, justifying an award of enhanced damages of treble the amount found or assessed under 35 U.S.C. § 284.

**ANSWER:** Infringement is a question of law, therefore Defendant is not required to answer. To the extent that an answer is required, Defendant denies infringement of the '713 Patent, denies willful infringement, and denies that an award of enhanced damages under 35 U.S.C. § 284 is justified. Defendant denies the remaining allegations in paragraph 45 of the Complaint not already addressed.

46. Plaintiff has been injured and seeks damages to adequately compensate it for Square's infringement of the '713 Patent. Such damages should be no less than a reasonable royalty under 35 U.S.C. § 284.

**ANSWER:** Denied.

47. Upon information and belief, Square will continue to infringe the '713 Patent unless permanently enjoined by this Court. Pursuant to 35 U.S.C. § 283, Plaintiff is entitled to a preliminary and permanent injunction against further infringement of the '713 Patent by Square.

**ANSWER:** Denied.

## GENERAL DENIAL

Defendant denies each and every allegation, express or implied, contained in Plaintiff's Complaint that is not specifically admitted.

## PRAYER FOR RELIEF

Defendant states that a paragraph wherein Plaintiff "prays for judgement against Defendant" does not require a response. To the extent that it does require a response, Defendant denies it, and denies that Plaintiff is entitled to any relief whatsoever, including, without limitation, the relief requested in (a)–(i) of its "PRAYER FOR RELIEF."

## DEFENSES

In support of the following defenses, Defendant incorporates all of its Answers listed above, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. Defendant reserves all other defenses at law or in equity that may exist now or in the future based upon discovery and further factual investigation in this case.

### First Defense: Non-Infringement

1. Defendant has not infringed, literally or through the doctrine of equivalents, any valid claim of the '171 or '713 Patents, either directly or indirectly.

### Second Defense: Invalidity

2. The claims of the '171 and '713 Patents are invalid and/or unenforceable because they fail to comply with one or more provisions of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, and 112.

### Third Defense: Estoppel, Waiver, and Acquiescence

3. Plaintiff Activate's claims are barred, in whole or in part, by the equitable doctrines of estoppel, waiver, and acquiescence, including but not limited to prosecution history estoppel that bars Activate from taking positions with respect to the scope of any asserted claim that has been surrendered during the prosecution of one or more of the claims of the '171 Patent and/or the '713 Patent.

### Fourth Defense: Speculative, Uncertain, and Unrecoverable Damages

4. Some or all of Plaintiff's alleged damages are speculative, uncertain, and not recoverable.

## COUNTERCLAIMS

For its counterclaims in this action, Square Entertainment LLC avers as follows:

## JURISDICTION AND VENUE

1. Counterclaimant Square Entertainment LLC ("Square") is a limited liability company organized and existing under the laws of the State of Arizona, having a principal place of business at 469 North Denver Avenue, Loveland, Colorado, 80537.

2. Upon information and belief, Counter-Defendant Activate Games, Inc. ("Activate") is a Canadian Corporation headquartered at 11-1099 Wilkes Avenue, Winnipeg, Manitoba, R3P 2S2, Canada. Upon information and belief, Activate is registered to do business in Colorado as a foreign corporation.

3. This Court has subject matter jurisdiction over these counterclaims pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court also has jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338 because these counterclaims present well-pleaded federal questions arising under the Patent Act of 1952 (as amended), 35 U.S.C. §§100, *et seq*.

4. This is an action based upon an actual controversy between the Counterclaimant and Activate concerning the non-infringement and invalidity of the '171 and '713 patents.

5. This Court has personal jurisdiction over Activate because Activate has availed itself of this Court by filing the Complaint.

6. The District of Colorado is the proper venue for these counterclaims pursuant to 28 U.S.C. §§1391 and 1400(b) because the original action was filed in this

District by Activate and because Activate is transacting, doing, and/or soliciting business in this Judicial District and elsewhere in the United States.

## COUNTERCLAIM I

## Declaratory Judgement of Non-Infringement of U.S. Patent No. 11,511,171

7. Counterclaimant Square repeats and realleges the statements made in Paragraphs 1–6 of the Counterclaims above, as though fully set forth herein.

8. This is a counterclaim for a Declaratory Judgement that Square has not infringed any claim of U.S. Patent No. 11,511,171 (the '171 Patent") entitled "Interactive Floor and Amusement Systems and Methods Employing Same" which issued on November 29, 2022.

9. Activate has brought suit against the Counterclaimant Square for infringement of the '171 Patent, alleging that Square directly and indirectly infringed the claims of the '171 Patent, as reflected in at least ¶¶ 34–40 of the Complaint.

10. Square has not infringed any claim of the '171 Patent, literally or under the doctrine of equivalents, and has not indirectly infringed the '171 Patent. No claim of the '171 Patent reads on the Pixel Game System licensed by Square. The Pixel Game System does not embody all of the limitations recited by any single claim of the '171 patent. For example, independent claims 1, 8, and 14 of the '171 Patent all recite the limitation "a sensing system operable to detect presence of any participant atop any panel of the array." "The written description of the '171 Patent only enable use of a mechanical pressure switch as and/or within "a sensing system operable to detect the presence of any participant atop any panel of the array." Square has not practiced a sensing system comprising a mechanical pressure switch as recited by claims 1, 8, and 14 as enabled by the written description of the '171 Patent.

11. In view of the foregoing, this counterclaim arises from an actual and justiciable controversy between Square and Activate as to the alleged infringement of the '171 Patent.

12. Square requests that the Court declare that Square has not infringed any claim of the ‘171 Patent directly or indirectly.

## COUNTERCLAIM II

## Declaratory Judgment of Invalidity of U.S. Patent No. 11,511,171

13. Square repeats and realleges the statements made in Paragraphs 1–12 of the Counterclaims above, as though fully set forth herein.

14. This is a counterclaim for a Declaratory Judgment that claims of the ‘171 Patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, and/or 112.

15. Activate’s allegations of infringement of the ‘171 Patent by Counterclaimant Square is based in part upon the ‘171 Patent being valid.

16. Each of the claims of the ‘171 Patent are invalid at least for failure to meet one or more requirements of patentability set forth in the patent statutes of the United States, 35 U.S.C. § 101, *et seq*. All claims of the ‘171 Patent are invalid at least as anticipated under 35 U.S.C. § 102 and/or obvious under 35 U.S.C. § 103 in light of prior art, for example including but not limited to:

(a) **US 2021/1397272 to Shalom et al.** with a presumed priority date of December 13, 2017 entitled “System and Methods for the Provision and Application of Modular Interactive Visual Display Surfaces” attached hereto as “Exhibit A,” disclosing, e.g..,. “A modular interactive visual display platform including interconnecting modules including tile modules forming a visual display sensing surface which generates graphical images and senses object proximate to the surface . . . The visual display sensing surface may include integrated addressable LEDs, proximity sensors and pressure sensors” (Abstract), and “Optionally, the array of addressable environment interface pixels comprises a controller configured to provide an

input data signal to a first pixel in the array and to receive the output data from a terminal pixel of the array. Optionally, the array of addressable environment interface pixels comprises a combination of environment interface pixels selected operable to detect environmental parameters via sensors selected from sensors, proximity sensors, pressure sensors and temperature sensors." (Para. [0014].);

(b) **US 2009/0100338 to Saetti** with a presumed priority date of September 29, 2008 entitled "Interactive Multimedia System" attached hereto as "Exhibit B," disclosing, e.g.,, "an interactive multimedia system comprising processing electronic means that controls multimedia playing means . . . wherein it further comprises a detecting means, capable to detect presence of at least one participate within an interaction area . . . having a floor treadable by said at least one participant, connected to the processing electronic means . . . being conditional on at least one signal received by the processing electronic means from the detecting means." (Abstract); and

(c) **US 8,215,642 to Macura et al**., with a presumed priority date of November 10, 2009 entitled "Interactive Modular Tile System" attached hereto as "Exhibit C," disclosing, e.g.., an "interactive modular tile system of the invention comprises a plurality of modular interactive tiles . . .." (Abstract), "an interactive modular tile system which comprises a plurality of modular interactive tiles, the system comprising electronic circuitry . . . being operative to determine a configuration of the plurality of module interactive tiles . . . The system allows various floor-based games to be played . . . Interacting with the tiles requires physical activity like stepping on the tiles, jumping from tile to tile . . .." (Col. 1, lines 25–40.)

In addition and alternatively, claims of the '171 Patent are also invalid for failing to comply with the requirements for patentability set forth in 35 U.S.C. § 112, including and without limitation the written description requirement.

17. In view of the foregoing, this counterclaim arises from an actual and justiciable controversy between Square and Activate as to the invalidity of the '171 Patent.

18. Square requests the Court declare the rights of Activate and Square with respect to the '171 Patent and declare the claims of the '171 Patent invalid.

## COUNTERCLAIM III

## Declaratory Judgement of Non-Infringement of U.S. Patent No. 11,986,713

19. Counterclaimant Square repeats and realleges the statements made in Paragraphs 1–18 of the Counterclaims above, as though fully set forth herein.

20. This is a counterclaim for a Declaratory Judgement that Square has not infringed any claim of U.S. Patent No. 11,986,713 (the '713 Patent") entitled "Interactive Floor and Amusement Systems and Methods Employing Same" which issued on May 21, 2024.

21. Activate has brought suit against the Counterclaimant Square for infringement of the '713 Patent, alleging that Square directly and indirectly infringed the claims of the '713 Patent, as reflected in at least ¶¶ 41–47 of the Complaint.

22. Square has not infringed any claim of the '713 Patent, literally or under the doctrine of equivalents, and has not indirectly infringed the '713 Patent. No claim of the '713 Patent reads on the Pixel Game System licensed by Square. Square does not practice all of the limitations recited by any single claim of the '713 patent. For example, independent claim 1 of the '713 Patent recites the limitation "a sensing system operable to detect presence of any participant atop any panel of the array." The written description of the '713 Patent only enable use of a mechanical pressure switch as "a sensing system operable to detect the presence of any participant atop any panel of the array." Square does not practice a mechanical pressure switch as

and/or comprised by a "sensing system operable to detect the presence of any participant atop any panel of the array" as recited by claim 1 as enabled by the written description.

23. In view of the foregoing, this counterclaim arises from an actual and justiciable controversy between Square and Activate as to the alleged infringement of the '713 Patent.

24. Square requests that the Court declare that Square has not infringed any claim of the '713 Patent directly or indirectly.

**<u>COUNTERCLAIM IV</u>**

**<u>Declaratory Judgement of Invalidity of U.S. Patent No. 11,986,713</u>**

25. Square repeats and realleges the statements made in Paragraphs 1–24 of the Counterclaims above, as though fully set forth herein.

26. This is a counterclaim for a Declaratory Judgment that claims of the '713 Patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, and/or 112.

27. Activate's allegations of infringement of the '713 Patent by Counterclaimant Square is based in part upon the '713 Patent being valid.

28. Each of the claims of the '713 Patent are invalid for failure to meet one or more requirements of patentability set forth in the patent statutes of the United States, 35 U.S.C. § 101, *et seq*. The claims of the '713 Patent are invalid as anticipated under 35 U.S.C. § 102 and/or obvious under 35 U.S.C. § 103 in light of prior art. In addition and alternatively, claims of the '713 Patent are also invalid for failing to comply with the requirements for patentability set forth in 35 U.S.C. § 112, including and without limitation the written description requirement. All claims of the '713 Patent are invalid at least as anticipated under 35 U.S.C. § 102 and/or obvious under 35 U.S.C. § 103 in light of prior art, for example including but not limited to:

(a) **US 2021/1397272 to Shalom at al.** with a presumed priority date of December 13, 2017 entitled "System and Methods for the Provision and Application of Modular Interactive Visual Display Surfaces" attached hereto as "Exhibit A," disclosing, e.g., "A modular interactive visual display platform including interconnecting modules including tile modules forming a visual display sensing surface which generates graphical images and senses object proximate to the surface . . . The visual display sensing surface may include integrated addressable LEDs, proximity sensors and pressure sensors" (Abstract), and "Optionally, the array of addressable environment interface pixels comprises a controller configured to provide an input data signal to a first pixel in the array and to receive the output data from a terminal pixel of the array. Optionally, the array of addressable environment interface pixels comprises a combination of environment interface pixels selected operable to detect environmental parameters via sensors selected from sensors, proximity sensors, pressure sensors and temperature sensors." (Para. [0014].);

(b) **US 2009/0100338 to Saetti** with a presumed priority date of September 29, 2008 entitled "Interactive Multimedia System" attached hereto as "Exhibit B," disclosing, e.g.,, "an interactive multimedia system comprising processing electronic means that controls multimedia playing means . . . wherein it further comprises a detecting means, capable to detect presence of at least one participate within an interaction area . . . having a floor treadable by said at least one participant, connected to the processing electronic means . . . being conditional on at least one signal received by the processing electronic means from the detecting means." (Abstract); and

(c) **US 8,215,642 to Macura et al.**, with a presumed priority date of November 10, 2009 entitled "Interactive Modular Tile System" attached hereto as "Exhibit C," disclosing, e.g.., an "interactive modular tile system of the invention comprises a plurality of modular interactive

tiles . . ..” (Abstract), “an interactive modular tile system which comprises a plurality of modular interactive tiles, the system comprising electronic circuitry . . . being operative to determine a configuration of the plurality of module interactive tiles . . . The system allows various floor-based games to be played . . . Interacting with the tiles requires physical activity like stepping on the tiles, jumping from tile to tile . . ..” (Col. 1, lines 25–40.)

29. In view of the foregoing, this counterclaim arises from an actual and justiciable controversy between Square and Activate as to the invalidity of the ‘713 Patent.

30. Square requests the Court declare the rights of Activate and Square with respect to the ‘713 Patent and declare the claims of the ‘713 Patent invalid.

**WHEREFORE**, Counterclaimant Square Entertainment LLC respectfully requests this Court enter an Order:

A. Dismissing Activate’s Complaint with prejudice and ordering that Activate take nothing by way of its Complaint;

B. Declaring that all claims of United States Patent No. 11,511,171 are not infringed (directly and/or indirectly) and/or are invalid;

C. Declaring that all claims of United States Patent No. 11,986,713 are not infringed (directly and/or indirectly) and/or are invalid;

D. Awarding to Counterclaimant Square such further and additional relief as this Court may deem just and proper, including but not limited to an award of attorneys’ fees and costs pursuant to 35 U.S.C. § 285.

## DEMAND FOR JURY TRIAL

Defendant and Counterclaimant Square Entertainment LLC hereby demands a trial by jury on all issues so triable.

Dated: March 17, 2025

s/ Steven J. Miller/

Steven J. Miller (AZ State Bar No. 031383)
IPath, PLC
15333 N Pima Rd., Suite 305
Scottsdale, AZ 85260
Telephone: (617) 370-5740
E-mail: sjmiller@ipathip.com

*Attorney for Defendant/Counterclaimant Square Entertainment LLC*